## Robert G. Shaw & others *vs.* Norfolk County Railroad Company & others.

After a suit in equity has been referred to a master, and heard and reserved on his report, presenting questions of law only, for the consideration of the full court, it is too late to apply to have issues of fact framed for trial by jury.

After a railroad corporation had executed a mortgage of its road, it united with two other railroad corporations in organizing a new corporation under the authority of an act of the legislature, which vested the property of the three former corporations, subject to all liens and incumbrances then existing upon it, in the new corporation, and provided that the first corporation should not by such union be relieved from any liability or obligation under which it then was, and that " when the several corporations shall in conformity to the requirement of the statutes have become one, all the franchises, property, powers and privileges now enjoyed by, and all the restrictions, liabilities and obligations conferred upon, said two corporations by virtue of their respective charters shall appertain to said united corporation, in the same manner as if contained or acquired under an original charter." *Held*, that this statute did not require the new corporation to assume the liabilities of the former corporations; and that the new corporation, having become the owner of the franchise and property of the first corporation, might become purchasers of its outstanding bonds, and hold them like any other creditor, or pay and extinguish them for the relief of the mortgaged property.

*Held, further*, that the directors of the new corporation had authority, without a vote of the stockholders, to pay and cancel so many as they thought fit of the outstanding obligations of the first corporation.

*Held, also*, that the new corporation could not prove the amount of the interest coupons attached to the bonds in their hands against the mortgaged property, so as to relieve it to that extent from liability under the mortgage.

*Held, also*, that bonds of the first corporation, bought by the new corporation, and afterwards reissued for the benefit of this corporation to holders for a valuable consideration, had not been extinguished, but should be allowed as a claim against the property covered by the mortgage.

*Held, also*, that the bondholders were not entitled to interest upon the interest coupons attached to the bonds.

BILL IN EQUITY to foreclose a mortgage executed by the Norfolk County Railroad Company to the plaintiffs as trustees, to secure the payment of certain bonds of that corporation, upon which the court at a former term entered a decree for possession. See 5 Gray, 162 & *seq.* The successors of the plaintiffs as trustees afterwards filed a petition for an account of the bonds now outstanding and for the instructions of the court in regard to the distribution of net proceeds of the working of the railroad in their hands. Upon this petition the case was referred to a special master in chancery, and on the coming in of his report was heard by *Bigelow*, J., who reserved the questions of law arising thereon for the consideration of the full court. At the argument, the Boston and New York Central Railroad Company claimed a trial by jury. The facts necessary for understanding the points of law decided appear in the opinion.

*B. R. Curtis & C. T. Russell*, for the plaintiffs.

*S. Bartlett & T. H. Russell*, for the Granite Bank and others.

*J. A. Andrew*, for Chaddock, Urann and others.

*E. H. Derby*, for the Long Island Railroad Company.

*C. Smith & S. W. Bates*, for the Boston and New York Central Railroad Company.

MERRICK, J.* The several questions of law arising upon the report of the master, to whom the petition and return of the plaintiffs had been specially referred, " to inquire, ascertain and report how many of the bonds originally issued by the Norfolk County Railroad Company are now outstanding, and entitled to the benefit and security of the mortgage made by that corporation, and to share in any dividend of the proceeds of the working of said Norfolk County Railroad, now in the hands of said trustees, and the amount that is due upon said bonds," were reserved for the consideration of the full court by the presiding judge before whom the cause came on to be heard.

These questions relate to the allowance or disallowance of the varic claims which were presented to the master, in the course of inquiry and investigation, by persons assuming to

---

* DEWEY, J. did not sit in this case.

be creditors of the Norfolk County Railroad Company, and entitled to the benefit of the mortgage made by that corporation. The results at which he arrived depended upon the state of facts applicable to each class of the claims presented, and they are accordingly open to separate and distinct consideration.

1. The Boston and New York Central Railroad Company object to the report finding that the bonds and interest coupons mentioned in the schedule numbered 3, and also those mentioned in the schedules numbered 4 and 5, are not outstanding, and are not entitled to the benefit and security of said mortgage, nor to share in any dividend of the proceeds of the working of the Norfolk County Railroad, now in the hands of the trustees. And it is contended in their behalf, that they are not to be concluded by the finding, or upon the facts stated in the report of the master, but have a right now to have their demands submitted and determined upon a trial by jury.

There is no doubt that, under the provisions of the Constitution, parties in cases in equity, as well as at law, are entitled to a trial by jury for the determination of all controverted questions of fact. This right is now regulated by the statute which expressly authorizes the court to frame issues of fact for that purpose, and to order the trial to be had upon them either at its own bar or at the bar of the superior court. Declaration of Rights, art. 15. *Charles River Bridge* v. *Warren Bridge,* 6 Pick. 376. *St.* 1859, *c.* 237, § 13. Gen. Sts. *c.* 113, § 22. But to be availed of, it must be asked for seasonably and at the appropriate time. If the court be not at least apprised by a party that he desires to have the cause take that direction, or be disposed of in that manner, he will be considered as having waived his right in that respect, and cannot afterwards be allowed to insist upon it.

In the present case, at an early stage in the proceedings, the petition and return of the plaintiffs were referred to a master with special and definite instructions. After his report was made, the cause came on for hearing before a single judge. If it was intended by any of the defendants to seek for or insist

upon a trial by jury, that was the proper time for making a motion to that effect. But no such motion was then made, and the various questions of law arising upon the report were accordingly reserved for the consideration of the whole court. It is quite too late, when those questions come on to be argued, to move for the framing of issues of fact.

But besides this, there is another decisive, and perhaps more satisfactory, objection to the allowance of the motion for a jury trial. Such a trial can be had only when controverted questions of fact are shown to be depending in the case, or when the final decision of it is to be made upon facts respecting which the parties are at variance. No difficulty of that kind exists in the present case. Everything stated by the master to have been proved, and everything which was offered on the part of the defendants to be proved, is acquiesced in and conceded. The rights of the parties are accordingly to be determined upon these facts, making the questions in controversy between the parties mere questions of law.

This brings us then to the consideration of the question, whether, upon the admitted facts and upon their own showing, the Boston and New York Central Railroad Company are entitled to have the finding of the master, disallowing their several claims, reversed.

After the Norfolk County Railroad Company had issued their bonds, in different sums of money, to the amount of seven hundred thousand dollars, and had made and executed a mortgage of their franchise, road and other property, as security for the payment of them, that company and the Woonsocket Railroad Company and certain other designated companies were authorized by an act of the legislature to unite themselves, upon certain prescribed terms, as one corporation. Under the authority of that act, and having complied with the prescribed terms and conditions, these several corporations did unite and form one corporation, taking the name of the Boston and New York Central Railroad Company. This union, and the formation of the new corporation, were afterwards duly confirmed and established by a subsequent statute. *Sts.* 1852, *c.* 158; 1854, *c.* 447.

It is a necessary consequence of this consolidation, that all the property belonging to each of the companies thus united became vested in the new corporation as its own, subject however to all the liens and encumbrances then existing upon it, and to the rights of their respective creditors to resort to it as a fund from which they might derive payment of their claims. This, in reference to the Norfolk County Railroad Company, is specially guarded by the provision that they "shall not, by any such union with any other company, be thereby released from any liability or obligation under which they now are, whether [to] bondholders or any other person or persons." *St.* 1852, *c.* 158, § 1. On the other hand, this transfer of property by operation of law did not impose upon the new corporation the obligation to pay the debts of the former corporations, nor subject it to any liability to their creditors. The particular provision that, when the several companies shall, in conformity to the requirements of the statutes, have become one, "all the franchises, property, powers and privileges now enjoyed by, and all the restrictions, liabilities and obligations imposed upon, said two corporations by virtue of their respective charters, shall appertain to said united corporation, in the same manner as if the same had been contained in or acquired under an original charter," does not require the assumption of liabilities incurred by the former companies by the contracting of debts, or arising out of acts done in the construction of their road, or in the prosecution of their business; but confers the privileges and imposes the obligations which are given to or required of all railroad companies by the general law by which the powers and duties of such corporations are defined and regulated. Then the Boston and New York Railroad Company, having become the owners of the franchise and property of the Norfolk County Railroad Company, subject to the rights of their creditors, could either become purchasers of the outstanding bonds, and hold them like other creditors, or could pay and extinguish them for the relief and discharge of their own property, as they should deem it most for their interest and advantage to do.

The real question therefore, in reference to the bonds and

interest coupons specified in the schedule numbered 3, is whether the defendants intended to extinguish and discharge, and have in fact extinguished and discharged, those bonds and coupons, and thus to that extent have relieved their property from the mortgage made by their predecessor. And of this, upon the facts alleged and offered to be proved by the defendants and conceded by all other parties in interest, we think there can be no doubt.

On the 7th of March 1854 the Boston and New York Central Railroad Company, at a legal meeting of the stockholders, adopted and ratified a mortgage on the franchise and property of the company, which had been prepared and executed under a vote of the directors, to secure the payment of bonds to the amount of twelve hundred thousand dollars; and voted that this mortgage should, from and after that day, be binding on the company. In this mortgage, a vote of the directors was inserted, providing " that in the issue of the said twelve hundred thousand dollars of bonds there shall be retained unissued by the corporation such amount of said bonds as at any given time shall be equal to the amount of said Norfolk County Railroad bonds then remaining uncancelled." From this it is evident, that the company intended to make provision for the payment and extinguishment of the debt secured by the previous mortgage, leaving the management of all matters of detail in relation to it to the officers of the company upon whom such duty should properly devolve.

Subsequently to this, the bonds of the Norfolk County Railroad Company, to a large amount, were by the holders thereof surrendered to and obtained by the directors of the new corporation; and on the 20th of the same month of March, the directors voted that these bonds, and also those that should thereafterwards be received, should be placed in the hands of the president, " to be by him used temporarily as collateral security, or be cancelled and defaced, whenever he shall think proper or expedient to do so." In execution of the authority conferred by this vote, the said bonds mentioned in schedule numbered 3, amounting to $285,650, were, by the order and direc-

tion of the president, and in his presence, "punched full of holes," "to prevent them from ever again being issued." After this they were passed over to the trustees under the twelve hundred thousand dollar mortgage, from whom the directors thereupon received an equal amount of the Boston and New York Central Railroad bonds. And these were subsequently issued to the public, and are still outstanding. At a later period, namely, on the 10th of May 1856, the directors voted that "all of said bonds," namely, those of the Norfolk County Railroad Company, amounting to $285,650, "have been paid, cancelled and punched, and this corporation will make no further claim for payment of said bonds." And finally, at a meeting of the directors on the 22d of August 1856, after reciting that whereas the said bonds "have been heretofore paid, discharged and cancelled by this company, and holes punched through the same indicate that fact, and whereas it is desirable that such bonds should be preserved as vouchers merely of such payment and cancellation, and yet that there should be no possibility of question as to their said cancellation," they voted "that the treasurer be and he hereby is directed to write upon the face of each of these bonds, ' Paid, discharged and cancelled.' " This direction was afterwards complied with.

Nothing can be more decisive than this, in relation to the election and determination of the company to extinguish and discharge their bonds, if the directors, in the exercise of their office and in the discharge of their duties, had authority to pass these votes and cancel the bonds. Nor is this disputed. But it is contended that the directors were not invested with any such authority, and possessed no right to do any such acts. And accordingly the company, at a legal meeting of the stockholders on the 24th of October 1859, disavowed all these proceedings, and voted, in reference to all the votes and acts of their directors relative to the payment, discharge and cancellation of said bonds, that they "were not authorized by this company, and that the directors had no power to make such surrender of said bonds ; and that this company refuses to sanction such votes, and the proceedings thereunder, by which the words ' paid, cancelled and discharged ' were written on said bonds."

But the denial of the power and authority of the directors of the company, upon which the claim to be entitled to prove these bonds, and to share in the earnings of the Norfolk County Railroad, in the hands of the trustees, wholly depends, cannot be sustained. The by-laws of the company in no way define or prescribe the duty of its officers, or limit their authority. The immediate government and direction of its affairs is therefore vested, by the general provisions of the statute, in the board of directors. Rev. Sts. *c.* 39, § 49. And they have consequently the power, in relation to all matters concerning the control and disposition of the property of the corporation, and in the conduct of its business, to do whatever it would be competent for the company itself to do or direct or order to be done. It is argued that the directors are the agents of the company, to manage and protect the property of the company, and not to destroy or give it away; and that therefore they could not cancel or discharge the bonds of the Norfolk County Railroad Company, of which they had become the owners. Certainly it is the duty of the directors to take care of and preserve the property and effects of the corporation; but this leaves them entirely at liberty to judge in what manner this can best be effected. If the directors thought that the interest of the company would be more promoted by cancelling and extinguishing the claims which were secured by the outstanding mortgage made by the Norfolk County Railroad Company, and thus enhancing the value of the security under the mortgage made by the new corporation, than by retaining the bonds of which they had become possessed, and holding them with the purpose of sharing in the proceeds and earnings which might be realized by the trustees from the working of the railroad, it was not only the right but the duty of the directors to do so; for they ought in all things to conduct the affairs of the company in the manner which in their judgment is best calculated to protect its rights and advance its welfare. And anything done by them within the scope of their authority is final and conclusive; and none of their acts can afterwards be repudiated or annulled by the company, merely because the end proves that

the means resorted to were inexpedient or disastrous in their operation. Even therefore if it could now be shown that it would have been to the advantage of the company that the bonds for $ 285,650 should have been retained uncancelled and undischarged, that consideration would have no tendency to show that they are now outstanding and valid claims against the obligors on the property formerly pledged to secure their payment. It is sufficient that they have in fact been cancelled and extinguished by those who had a right to determine what disposition should be made of them.

As to the interest coupons mentioned in schedules numbered 4 and 5, there is no ground upon which the Boston and New York Central Railroad Company were entitled to prove them against the trustees of the Norfolk County Railroad Company, so as to share in the fund in their hands derived from the working of the road. These coupons do not constitute any contract of themselves; they are merely memoranda which are received by the obligees as evidence that the bearer of them is entitled to the amount specified in each, as interest which has accrued upon the bond to which it was attached. Considering the relation between the old and the new corporation, and that the taking up of any such interest coupon by the latter, or paying the amount expressed in it, has the effect of relieving to that extent their mortgaged property, and that this must so far operate for their benefit, the legal conclusion is unavoidable, that this is the payment of interest, and not the purchase of an outstanding debt or cause of action, which could be the subject of transfer and assignment. Such a payment cannot entitle the defendants to set it up afterwards as a claim, or to prove it as a still subsisting debt.

2. As to the bonds mentioned in schedule numbered 2, to the allowance of which by the master objection is made by Chaddock, Urann and others, holders of other bonds, it is plain that they are still outstanding, and are therefore entitled to share in the funds in the hands of the plaintiffs as trustees of the Norfolk County Railroad Company. These bonds were, in pursuance of the vote of the board of directors of the Boston and New York

Central Railroad Company, placed in the hands of the president, to be used temporarily by him as collateral security, whenever he should think proper to do so. In pursuance of that authority, they were afterwards reissued for the benefit of the corporation. They came into the hands of *bona fide* holders for a valuable consideration, and they have never been redeemed, or in any way paid, extinguished or cancelled. The proof of these was therefore properly allowed as part of the indebtedness of the Norfolk County Railroad Company, and secured by their mortgage.

3. In the same manner the bond for five thousand dollars, now held by the Long Island Railroad Company, should have been allowed. The report of the master disallowing it was therefore erroneous; and his report must be so far reformed and amended as to add this item to the claims which are to participate in the distribution of the earnings of the Norfolk County Railroad in the hands of the plaintiffs.

4. The disallowance by the master of interest upon the interest coupons, after payment demanded thereof, was correct. Interest upon interest which has accrued upon contracts upon which interest is by its terms payable at stated periods, before the principal becomes due, is never allowed in making up judgment in suits thereon. This has often been determined, and must now be considered as the settled law in this commonwealth upon that subject. *Hastings* v. *Wiswall*, 8 Mass. 455. *Wilcox* v. *Howland*, 23 Pick. 167. *Henry* v. *Flagg*, 13 Met. 64.

The conclusion therefore upon the whole case is, that the master's report, amended as before mentioned in reference to the claim of Long Island Railroad Company, is approved and accepted; and a decree for the distribution of the funds, in the hands of the plaintiffs as trustees under the mortgage made by the Norfolk County Railroad Company, from the earnings of the road, is to be entered according thereto.

*Decree accordingly.*